# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 04-2064

JOHNNIE BROWN,

*Plaintiff-Appellant,*

*v.*

ARGOSY GAMING COMPANY, L.P.,

*Defendant-Appellee,*

Appeal from the United States District Court for the
Southern District of Indiana, New Albany Division.
No. 02 C 209, **Sarah Evans Barker**, *Judge.*

SUBMITTED AUGUST 9, 2004—DECIDED SEPTEMBER 15, 2004[1]

Before POSNER, KANNE, and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* According to Ms. Johnnie Brown,
the plaintiff-appellant, her husband has a problem with
gambling. The Browns live in Cincinnati, Ohio, which is
approximately twenty minutes from the defendant-appel-
lee's casino, the Argosy Casino, in Lawrenceburg, Indiana.

---

[1] This successive appeal has been submitted to the original panel
pursuant to Operating Procedure 6(b). After reviewing the briefs
and the record, the panel is unanimously of the view that oral ar-
gument is unnecessary. Accordingly, the appeal has been submitted
on the briefs and the record alone. *See* Fed. R. App. P. 34(a).

Brown alleges that for the last several years, her husband has gambled at the casino six to seven days a week, losing between $15,000 and $20,000 per year for the last four years. As a consequence of these losses, Ms. Brown claims, the Browns have been unable to make their mortgage payments or their insurance payments, their telephone and water service has been disconnected, and they have been threatened with termination of gas and electric service. At times they have been unable to buy food.

Brown asked her husband to stop gambling or to do so modestly but he has steadfastly refused. She sought the assistance of Gamblers Anonymous but that organization informed her that it could only act at the request of the gambler and not a third party. Approximately two years before the filing of this appeal, Brown asked a supervisor of the Casino to help her to stop or abate her husband's gambling. Argosy refused, claiming that there was nothing that they could do because Mr. Brown was "of age."

Brown had a heart attack in 1999 and a mild stroke in 2001, both of which she attributes to the anxiety caused by her husband's gambling losses. Ms. Brown, however, does not wish to divorce her husband.

Brown filed suit in the district court of the Southern District of Indiana, claiming that Argosy was negligent in its failure to exercise reasonable care after being notified that her husband was a compulsive gambler and was continuing to gamble at the peril of his family. Brown initially sought injunctive relief and damages. A few days after filing the complaint, Brown filed a motion to certify to the Indiana Supreme Court the state law question raised by her complaint. In response, Argosy filed a motion to dismiss and in opposition to the motion to certify. The District Court judge granted the motion to dismiss and denied Brown's motion to certify and her motion for preliminary injunctive relief. Brown appealed only the denial of the motion to certify the following question to the Indiana Supreme Court:

Whether a wife has a cause of action against a casino where a husband is a compulsive gambler, where the husband has incurred substantial gambling losses, which occurred after the wife made a request to the casino to bar her husband, and which resulted in serious emotional and financial distress to the family.

We dismissed the appeal, noting the two procedural gaps that denied us jurisdiction. First, the district court below granted Argosy's motion to dismiss without prejudice—a non-final, non-appealable judgement. *Brown v. Argosy Gaming Co.*, 360 F.3d 703, 705 (7th Cir. 2004). Second, we concluded that an order refusing to certify a question to a state supreme court was not an independently appealable order, and that the "litigant whose motion to certify has been denied may appeal the denial of the motion along with the remainder of the final order." *Id.* at 706. We noted that "[c]ertification is meaningless without a viable cause of action in which to use the answer received from the state supreme court." *Id.* at 706, n.4.

Notwithstanding these statements, Brown is before us again appealing only the denial of the motion to certify. On remand, Brown successfully moved to transform her prior dismissal into one with prejudice. (R. at 39, 42), but rather than appealing both the grant of the motion to dismiss (now a final, appealable order) and the denial of the motion to certify, Brown again appeals only the latter and adds to it a motion to this court to certify the question to the Indiana Supreme Court pursuant to Rule 52 of the Circuit Rules of the United States Court of Appeals for the Seventh Circuit (Cir. R. 52).

We are as puzzled by this decision as we were the first time we heard Brown's appeal. For even if we were to certify the matter to the Indiana Supreme Court, and even if the Indiana Supreme Court were to accept certification and decide that a wife does have a cause of action against a casino under these circumstances, what would Brown do with that answer? She claims that "[a] favorable ruling will

simply permit this case to continue in the District Court." Appellant's brief at 9. The district court, however, denied Brown's motion for a preliminary injunction and granted Argosy's motion to dismiss without prejudice, and Brown failed to appeal either order. There simply is no more "case" to which Brown could apply the ruling from the Indiana Supreme Court. The situation would be different if Brown were claiming that, had the district court received the appropriate answer from the Indiana Supreme Court, it would not have erred in granting the motion to dismiss. Brown, however, clearly and deliberately chose to appeal only the denial of the motion to certify the question to the state supreme court.

To that appeal, Brown has added a separate motion to this court to certify the question of state law to the Indiana Supreme Court pursuant to our Circuit Rule 52(a) which reads:

> When the rules of the highest court of a state provide for certification to that court by a federal court of questions arising under the laws of that state which will control the outcome of a case pending in the federal court, this court, sua sponte or on motion of a party, may certify such a question to the state court in accordance with the rules of that court, and may stay the case in this court to await the state court's decision of the question certified. The certification will be made after the briefs are filed in this court. A motion for certification shall be included in the moving party's brief.

Cir. R. 52. Most significantly, the rule allows us to certify only those questions "which will control the outcome of a case pending in the federal court." *Id.* In interpreting the rule, we have considered many factors warranting certification but have stated that "[t]he most important consideration guiding the exercise of this discretion is whether the reviewing court finds itself genuinely uncertain about a question of state law that is vital to a correct disposition of the case." *State Farm Mut. Auto. Ins. Co. v. Pate*, 275 F.3d

666, 671 (7th Cir. 2001) . As we explained above, however, there are no pending questions before a federal court to which the answer from the Indiana Supreme Court can be applied. We see no reason to impose upon the Indiana Supreme Court to answer a question that will not aid either party in any ongoing federal litigation.[2]

   We could end our discussion of certification here. Without an underlying case in which to apply the answer from the state supreme court, certification can never be warranted. We will consider the remaining factors, nevertheless, if only to make it absolutely clear that this case is not an appropriate one for certification. Those other factors include whether the case concerns a matter of vital public concern, the issue will likely recur in other cases, resolution of the question to be certified is outcome determinative of the case, and whether the state supreme court has yet to have an opportunity to illuminate a clear path on the issue. *Allstate Ins. Co. v. Menards,* Inc., 285 F.3d 630, 638-39 (7th Cir. 2002); *Pate*, 275 F.3d at 672; *In re Badger Lines, Inc.*, 140 F.3d 691, 698 (7th Cir. 1998). We have, at times, also considered whether the supreme court of the state would consider the issue one of importance to the growth of the state's jurisprudence, whether resolution will benefit other future litigants, or whether intermediate courts of the state are in disagree-

---

[2]   Furthermore, Indiana Rules of Appellate procedure allow a federal courts to "certify a question of Indiana law to the Supreme Court when it appears to the federal court that a proceeding presents an issue of state law that is **determinative of the case** and on which there is no clear controlling Indiana precedent." Ind. R. of App. P. R. 64(A) (emphasis ours). It is worth emphasizing that principles of federalism bar us from compelling the Indiana Supreme Court to do anything. It has full discretion to dictate which questions from the federal courts it will answer. And so we may certify questions all day and night, but if the question does not meet the requirements of the Indiana Supreme Court—that the question presents an issue that is determinative of the case— the requests will rightfully fall on deaf ears.

ment. *Allstate Ins. Co.*, 285 F.3d at 639. On the flip side, a case is not a good candidate for certification where the case is fact-specific, where there is not much uncertainty regarding the issue in dispute, and where resolution of the question will not dispose of the case. *Id.*

Although we agree that gambling addiction and its attendant costs to families and society are matters of public concern, and we note that the question would be one of first impression for the Indiana Supreme Court, this case is not otherwise worthy of certification. As we have already discussed, it is not outcome determinative. Furthermore, intermediate courts of the state are not in disagreement, and there is little uncertainty regarding the issue. While this case was pending, the intermediate court of Indiana declared in *Stulajter v. Harrah's Indiana Corp.*, 808 N.E.2d 746, 749 (Ind. Ct. App. 2004), that Indiana's gaming statutes and regulations do not create a private cause of action to protect compulsive gamblers from themselves. This court, applying Indiana law, had earlier come to the same conclusion. *Merrill v. Trump Indiana, Inc.*, 320 F.3d 729, 732 (7th Cir. 2003). Although neither of these cases addressed the slightly different question of whether a casino owes any duty to the family member of a compulsive gambler, such an extrapolation does not require much of a leap. Nor do we think resolution of this minor variation will contribute much more than *Stulajter* and *Merrill* have to the growth of Indiana's jurisprudence on this matter. "When the state Supreme Court has not decided the issue, the rulings of the state intermediate appellate courts must be accorded great weight, unless there are persuasive indications that the state's highest court would decide the case differently." *Pate,* 275 F.3d at 669.

Furthermore, appellants ask us to certify a fairly case-specific question:

> Whether a wife has a cause of action against the casino where the husband is a compulsive gambler, where the husband has incurred substantial gambling

> losses which occurred after the wife made a request to the casino to bar her husband and which has resulted in serious emotional and financial distress to the family.

It requires (1) an intact marital relationship and a wife unwilling to divorce her husband and ask a family law court to protect her share of the marital assets, (2) a compulsive gambler (however that is defined), (3) a request by one spouse that the casino bar the other spouse, (4) the gambler's objection to his exclusion from the casino, (5) subsequent substantial gambling losses after the request, and (6) serious emotional and financial distress. We do not think certification of such a specific question will benefit multitudes of future litigants. *See Hanlon v. Town of Milton*, 186 F.3d 831, 835 (7th Cir. 1999) ("We also recognize that future litigants have a real and substantial interest in knowing" the answer to the question the appellant seeks to certify).

Finally, although not a primary factor, we are entitled to take into account whether the request for certification to the state court came from the party who chose federal jurisdiction in the first place. *See Schmitt v. Am. Family Mut. Ins. Co.*, 161 F.3d 1115, 1117 (7th Cir. 1998). As we have noted, "it's not a proper alternative to proceeding in the first instance in state court to sue in federal court but ask that the suit be stayed to permit certifying the interpretive issue to the state court, thus asking that the suit be split between two courts." *Doe v. City of Chicago*, 360 F.3d 667, 672 (7th Cir. 2004). This reasoning seems particularly apt where the plaintiff appeals only the certification question and there are no other issues remaining in federal court. In short, if the plaintiff had wanted to know only whether the Indiana courts would support her cause of action, she had the option of bringing her case there in the first instance.

For these same reasons, we also hold that the district court did not err by refusing to certify the question to the Indiana Supreme Court. The decision to grant or deny a motion to certify a question of state law is discretionary with the district court. *United Farm Bureau Mut. Ins. Co.*

*v. Metro. Human Relations Comm'n*, 24 F.3d 1008, 1015, n.4 (7th Cir. 2001); s*ee also Lehman Bros. v. Schein*, 416 U.S. 386, 391, 94 S. Ct. 1741, 1744, 40 L. Ed. 2d 215 (1974). Consequently, we review the decision to deny a motion to certify for abuse of discretion, and we will not second-guess the decision of a trial judge if it is within the range of options from which one would expect a reasonable trial judge to select. *Liu v. Price Waterhouse, L.L.P.*, 302 F.3d 749, 754 (7th Cir. 2002). As we have noted before, "even if there is no clear guidance from a state court, and a case technically meets the standards for certification, certification is neither mandated nor always necessary." *Pate*, 275 F.3d at 673. In short, "we approach the decision to certify with circumspection." *Id.* at 671. Consequently, Brown faces a steep uphill climb; first to overcome the liberal abuse of discretion standard and second to overcome our hesitancy to utilize the certification process with its incumbent costs to the litigants and the state court system.

The factors that the district court must consider when deciding whether to certify a case to a state supreme court are more or less the same as those that this court considers when acting pursuant to Circuit Rule 52. *See Patel v. United Fire & Cas. Co.*, 80 F. Supp. 2d 948, 953-56 (N.D. Ind. 2000) (stating that certification only appropriate where issue likely to recur, where it will be dispositive of the case, and has not been considered by the court); *Carver v. Condie*, No. 94 C 2240, 2000 WL 204240, at *11-12 (N.D. Ill. Feb. 15, 2000) (using Seventh Circuit Rule 52 and interpreting case law as a basis for determining whether certification is appropriate); *Travelers Cas. & Sur. Co. v. Elkins Constrs., Inc.*, No. IP97-1807-C-T/G, 2000 WL 748091, at *7 (S.D. Ind. 2000) (certification only appropriate if there are no clear controlling precedents from the state supreme court); *Banco Panamericano, Inc. v. Health Risk Mgmt., Inc.*, 78 F. Supp. 2d 804, 805 (N.D. Ill. 1999) (certification appropriate when federal court is faced with novel and unsettled ques-

tions of state law); *Koval v. Simon-Telelect, Inc.*, 979 F. Supp. 1222, 1230, n.6 (N.D. Ind. 1997) (noting that certification should be limited to questions that are clearly defined and outcome determinative); *Pekin Ins. Co. v. Super*, 912 F. Supp. 409, 412 (S.D. Ind. 1995) (stating that certification is not appropriate where the district court is confident that it can accurately predict how the Indiana Supreme Court would rule and where question is not one which arises frequently). Of course the district court must also consider Rule 64 of the Indiana Rules of Appellate Procedure which allows a district court to certify a question to the Indiana Supreme Court where the answer to the question will be outcome determinative and there are no clear controlling precedents in the decisions of the Indiana Supreme Court. *Travelers Cas. & Sur. Co.*, 2000 WL 748091, at *7 (citing a prior version of Ind. R. of App. P. 64).

The district court considered the factors outlined in *Allstate* and *Pate, supra*, and determined that they counseled against certifying the question to the Indiana Supreme Court. (R. at 28, pp.3-4). Specifically, the district court found that Brown presented a fact-intensive question and that the answer to that question would not necessarily apply to future litigants whose circumstances differ from those articulated in the question. Furthermore, the district court noted that the Indiana legislature by its silence has declined to impose the very duty that Brown advocates in this case, and that her analogy to dram shop liability was too attenuated to justify the imposition on the resources of the Indiana Supreme Court. (*Id.* at p.4).

For all of the reasons that we refuse to certify this matter to the Indiana Supreme Court pursuant to our own Circuit Rule 52, we hold that the district court judge did not abuse her discretion in coming to the same conclusion.

For this reason we AFFIRM the district court's denial of the motion for certification and deny Brown's motion for

certification pursuant to Circuit Rule 52. Brown is to pay costs of this (second) appeal.

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*